podium would look like. If you would like to reserve any time for rebuttal, this is for all appellants today, you're certainly welcome to do so, but the clock will show your total time and you'll be responsible for reserving the time for yourself. MR. SMITH. Yes. I would like to reserve ten minutes for rebuttal. Good morning. My name is David Smith, and I represent the claimants in this case. The Court recently inquired as to how long the government has had possession of the funds in this case, and the government responded that the funds began to be transferred to it on June 7th of 2002. Despite promising the claimants to restore the funds to them in a speedy manner, at one point the government indicated to Mr. Sternbuck, who's sitting here at counsel table, who's co-counsel as well as a victim in this case, that the government thought it could distribute the funds by November of 2002. Well, we're almost two years past that time, and the government has done practically nothing to accomplish this return of the funds to the investor victims. And after the district court's ruling that we had no standing and that our only choice was to go to the DOJ for remission of the forfeiture, we promptly filed remission petitions on behalf of all of the claimants we represent. But to date, the government hasn't acted upon any of them, and frankly, we don't know why. But could it, with this matter pending? I mean, if you could, are they allowed to remit if the possibility of going back to district court is still alive? They're certainly allowed to remit. It wouldn't move this case. We would still be here. But the government could easily make tentative decisions on remission, which would become final if this Court ruled against us, that is, that we had no right to be in court contesting the forfeiture. And the government hasn't asked us for any more information to decide the remission petitions, but yet they haven't acted upon them, and months and months have gone by. We argued in our briefs that one of the reasons we shouldn't be forced to rely on the remission process is because there are no time limits for the government to act upon a remission petition. The DOJ has generously given itself as much time as it likes to decide these things, and I know from experience that it often takes a long time. As a matter of fact, I think I had a case before Judge Fogle was. Six years ago, yes. Six years ago, where the — where he found that the customs services delay in acting upon a remission petition filed by me on behalf of a client's violated due process. And the government continues to take its sweet time in acting on remission petitions. Mr. Smith, are there any other practical differences between what your clients could get through the remission process and what they can get through the forfeiture process? Yes. In addition to the delay factor, which I've been talking about, we pointed out in our briefs that according to the DOJ regulations that govern remission, the government is required to keep the interest that accumulates on these funds for itself and not return it to the victims. And number two, the government is required to deduct its investigative and prosecutive costs from the pot before distributing the money. Now, it's possible that the government doesn't always follow its own regulation in that regard. I don't know. But what I know is what the regulation says, and it says those costs shall be deducted from the amount before it's distributed. And in this case, we think the investigative and prosecution costs are going to be very, very substantial. The — just recently, in response to the Court's question, we took a look at the record on the criminal side here. And if you look at the docket entries on the criminal side, this case is really dragging on on the criminal side as well. The district judge has authorized foreign depositions to be taken. And I understand there are CJA lawyers involved, and they're going to be going to, I assume, Lichtenstein to take depositions. All that's going to be very expensive. We don't know what the total costs are, but if the government added it all up, it could well exceed a million dollars. What about the interests of the victims who are not represented by — who are not part of this class of claimants? How are the interests of those people factored into this? Well, again, as we explained to the district judge in our briefs, those people would not be prejudiced in the least if we are allowed to pursue these claims in court. Those people, as the government has also acknowledged, would have the same right to pursue their claims in court as we do, or in the alternative, if they didn't want to hire a lawyer and go through that process, they could file remission petitions. And the government presumably would grant those petitions if they were meritorious. And so those folks — the only difference in the treatment of the two classes might be with respect to the interest and prosecution costs. And the government — I don't know how the government would handle that, frankly. It would seem to me that they should award interest to everyone. If you prevail on this appeal, are you saying that the other people who did not seek to get into this case could at that point, if the case were remanded to the district court, on the same footing as your clients? Absolutely. The government has acknowledged that, that they would be required — it's in their brief — they would be required to send out letters to the remaining claimants who have not appeared in the case and to inform them of their right to appear, that they — the court has ruled that they have a right to contest the forfeiture and to give them an opportunity to file a claim, as we did. And I have no idea how many of them would avail themselves of that opportunity, but that's up to — that's — I don't control them. But it's going to be apples — it's going to be an apple or an orange as to everybody, not just the people you happen to represent. Correct. Correct. Everybody would be treated the same. And there's nothing wrong with that. The remission process is certainly a lot less expensive for the claimants because they don't have to appear, they don't have to hire counsel, necessarily. And some people may choose to call it a streamlined process. I don't want to call it that because, as in this case, it may well take longer for the remission petitions to be decided than for the district court to make a decision. If we had been allowed to appear in the district court, I dare say that this case would be over already. We had — indeed, early on, we proposed — before the government — we even filed claims, we proposed to the government that we try to resolve these claims out of court without the necessity of filing anything, presumably on the same type of — because the government has never denied that we represent victims, innocent victims. That's the strange thing about the posture of this case. The government has never claimed that we have anything but innocent clients who did invest their money. So why go through all this trouble instead of just recognizing their claims through an informal give-and-take, as, in fact, I did in a big Florida case that was very similar to this? But the government rejected that proposal out of hand. It seems that their whole standing position boils down to a desire on the part of the DOJ to be the bull of the woods here. They want to have complete control of this process, and they want the victims, who they purport to be interested in helping, to have no rights whatsoever in the process, and to be totally dependent on their good graces, whether they choose to grant a petition or not and when they choose to grant it. And I don't think that's a good system, but it's not the system that the other courts have said exists, and it's not what Congress intended. Again, my treatise cites eight cases where courts have recognized that the beneficiary of a constructive trust has standing to contest a forfeiture, either a civil forfeiture or a criminal forfeiture. Several of those cases are like this case in that they involve victims of a fraud. Not all of them involve fraud victims. Some involve other types of situations where constructive trust can be imposed, but the principle is basically the same. And likewise, Congress, I have argued in the CAFR statute, the Civil Asset Forfeiture Form Act, did grapple with this issue, as I explained, and came out on our side. They rejected the DOJ's effort to exclude victims of a fraud from having standing to contest a civil forfeiture case. They actually made that decision, although, you know, it doesn't you never know it just to look at the statutory language. You have to delve into the legislative history, as I did. And I would add that the government has never even addressed that legislative history because it doesn't have an answer to it. Throughout this litigation in the district court and in this court, the government hasn't said one word about that legislative history. I think if we well, I see my ten minutes is already up, so I will sit down unless the Court has any immediate questions for me and reserve the remainder of my time. Thank you. Thank you. Good morning. May it please the Court, I'm Assistant U.S. Attorney at Law for the United States of America. As a housekeeping matter, may the government inquire as to the status of its motion to strike the appendix to the claimant's opening brief, which that same appendix was also attached to their reply brief. It's pending before us, and we would customarily dispose of it with our disposition of the merits. Thank you, Your Honor. Just to respond initially to some of the comments of the Claimants Counsel, jumping immediately to his statement that the Department of Justice's position in this case is that they want the victim to have no rights whatsoever. Mr. Smith's personal experience that he commented on up here indicates that that is not the case, and it certainly is not the case. When Congress put the remission process into place and gave the Department of Justice the authority to generate regulations to work through that process, Congress made a decision that said who can contest civil forfeiture proceedings, and there's a reason for that. Let me ask you this, Mr. Welk. Am I right in thinking that that's under regulations under 28 C.F.I.? That's correct, Your Honor. In Section 9.5a, it says the remission shall not be granted unless the Petitioner establishes that the Petitioner has a legally cognizant interest in the seized property. So in your position, how do these people have a legally cognizant interest in the seized property? Well, the way the regulations are interpreted and applied is that any individual who has suffered an injury in fact as a result of the criminal action under which or according to which the property was forfeited is a victim under the definition. And has a legally cognizant interest. Is that correct? Legally cognizant within the meaning of the definition of victim, which I believe appears in Section 9.1 of the regulations. But if they have a legally cognizant interest, why isn't that sufficient for Article 3? Well, two reasons. Number one, because the interest that's referred to in Section 9.5 derives from and is defined by the interest of a victim as defined in Regulation Section 9.1. Secondly, Well, but it's still a legally cognizant interest. That's what the general rule is. If you've got a legally cognizant interest, and it may come from any source, you've got Article 3 standing. Well, but for purposes of a civil forfeiture case, Your Honor, a legally cognizable interest is determined according to State law. And in this case, under California law, these individuals who sent their money to a bank as bank depositors, and under other laws as well. But under California law, Well, can I interrupt you, Mr. Welk? Did they send their money to a bank? That's where the money ended up. No question about that. But they sent the money to the defendant in the criminal case. And they thought he was going to invest it. And instead, he put it in a bank in Liechtenstein. I mean, they didn't know that they were going to be bank depositors. Actually, that's not true, Your Honor. The record is clear. And it's clear in the complaint, and there's been no dispute of these facts, that the victims, while some of them did send money to Mr. Sexton, in fact, some of them sent money to him at his hotel up in northern or central California. But all of them sent their money to Mr. Sexton, believing that he was going to deposit that money into an offshore bank account. Now, what they did – what they also believed was that that money would be deposited in an account in their name, which was not true. But all of them intended that their money would be deposited into a bank somewhere, and I believe all of them understood that it was going to be a bank outside of the United States. But wasn't it part of a larger package of services that he was offering them? He indicated that he would be depositing their money into a bank and accounts in their names and would be investing those monies. But there was no indication that he was going to deposit them into – in other words, that he was going to make separate deposits. These were going to be monies that would be separated and held in a different place than the other assets. But is it fair to treat them? Is it appropriate to treat them in the same way as if they put their money in Wells Fargo or Bank of America? This was a – there was a whole scheme involved here that they thought was legitimate, turned out not to be. Why is it appropriate to treat them as if they were ordinary bank depositors? It's fair to treat them that way, Your Honor, because the remission process is the fairest way that the most victims are going to recover the most money. Well, that's – there's no law on that. You're really asking us to make that determination. And given the incredible slowness with which you pursued it, it's not very reassuring that you've got the fairest or best way. Well, I would point out, Your Honor, that the remission process was delayed. As Judge Clifton pointed out, we cannot remit money that is subject to this case. The remission process is ongoing. And while the claimants feel that this has gone too slowly for them, I would point out that if – Is everything ready to go if you win this case? If – Are all the people lined up? Your Honor, the petitions are in the process of being pursued. I believe that, yes, by the time the decision is issued in this case, that the Department will be in a position to render its decisions on the petitions for remission that have been submitted. I wanted to ask you another question as to notice. Because this is a statute that really hasn't been very much interpreted. But you are required to give notice in the case of a nonjudicial forfeiture. At the start, you don't have a judicial forfeiture, do you? It is the – there's no requirement to do an administrative forfeiture. And in an effort to save time here, the government did not do an administrative forfeiture in this case. But at the moment that you seize the money, what – how do you characterize that? At the moment we seize the money, Your Honor, under Section 983, it is the Department's contention that if an administrative forfeiture is going to be commenced, it has to be commenced within 60 days. If an administrative forfeiture is not commenced, then there is no 60-day deadline. Here – You can keep it forever or what? No, absolutely not, Your Honor. What's the deadline? The deadline would be – it would be according to due process principles. You mean there was absolutely no statutory requirement? You could just keep it and five years maybe would be due process. That's not true. I would not – But what is true? The statute, 983, does not provide a strict deadline. Any deadline? In a situation – Please, let's not quibble. It provides no deadline. Is that correct? I'm not quibbling, Your Honor. It does – I don't say strict deadline. There is no deadline. There is a strict deadline if administrative forfeiture – There is no deadline if you file a civil forfeiture. That's your position. There is no explicit deadline in Section 983. No explicit. There is no deadline. Your Honor, the government – Why do you quibble like this? There's no strict deadline. There's no explicit deadline. There just is – can't you just say there is no deadline? I cannot agree with that, Your Honor, because – All right. What is the deadline? There is a deadline. What is it? The deadline is no more than 180 days. Where does that come from? That comes from the initial 60-day time period during which notice is required to be given under administrative forfeiture under 983, the 30-day period during which a claimant can file a claim to the administrative forfeiture, and the 90-day limit that follows that claim by which the government must file a judicial complaint. But if I understand it, you say you haven't started an administrative process. My – what I'm suggesting to you, Your Honor, is that under – if the government had commenced an administrative forfeiture – But if it had, the longest period that it could have waited between – All right. But if it's going to do it judicially, what is the deadline? 180 days. Where does it come – where is that set? It's not in the statute, Your Honor. There is no explicit deadline. That's correct. There is no strict deadline. Correct. It's an imaginary deadline. Can you say that? We have an imaginary deadline? I can say that Congress did not establish a deadline. Well, that's good. At least you face the truth. Well, but as I say, Your Honor, the government interprets that 100-day period, 180-day period that I've just described. Where do we know that? I'm sorry? How do we know that's your interpretation, besides just saying so? There's no way for you to know it, Your Honor. It's not in the regulations. No, it is not. Why isn't it? Because there is – there are no regulations, to my knowledge, that treat this issue, and they have nothing to do with the remission. Quite a gap. That may be true, Your Honor. Again, my point being that when Congress set the deadlines in Section 983, the purpose of doing that was to establish that there would be some limit. And it didn't set any deadline for this important judicial proceeding. That's the incredible thing. That's correct. But I guess my point is, Your Honor, that didn't have any effect in this case, because the government treats the deadline as though it is 180 days. And here, the complaint was filed well within that period. So if administrative forfeiture proceedings had been commenced, and a claim had been filed, the deadline for the filing of the complaint would have been after the date that we actually filed the complaint. The claimants have argued in this case – I'd like to go back to a point suggested by Judge Fogel's earlier question, and whether there's a difference here. You've said that the reason that under State law, these claimants don't have standing is that they – it's a bank account, and they're only general creditors of the bank. But it isn't really the bank we're talking about here, is it? It's Sexton. And they are not simply general creditors of Sexton. They're not competing with other creditors of the bank for these funds. The bank's fine. The people back in Lichtenstein are doing okay. So doesn't that give us the wrong perspective in terms of what their claim is vis-à-vis Sexton? They are competing with other depositors of the bank in the sense that all of them are presumably depositors in the bank. But the bank's not short of money. This isn't BCCI where the bank was insolvent and there wasn't enough to go around, and so some claimants are trying to shove in front of others. With regard to this pot of money, these claimants are simply going after this pot of money, and there's no greater claim against the bank than this pot of money, and no other creditor of the bank has a claim against this pot. So with regard to this pot, it is simply the defrauded victims plus potentially other creditors of Sexton, although I can't imagine how some other creditor of Sexton through his hotel would have any claim. It looks to me like it's just the collection of victims that have claims against this pot of money. Who else does? Well, originally, Sexton and his entities that he created had claims, obviously. Theoretically, but not surprisingly, they elected not to appear to assert such a claim. Is there anybody else? The question, Your Honor, is whether we're going to – I agree that at this point, where we are right now, the class of people who are seeking to recover some portion of – Let's go back in time. Okay, we'll add Sexton to the list. Who else? I mean, other creditors of the bank were not claimants to this money because they're doing just fine with the bank. The bank doesn't even theoretically seem to have a claim to this money. The money was sent voluntarily. There's no fight there. I just don't understand why the fact that they're general creditors of the bank has any meaning with regard to this particular pot of money. Well, Your Honor, the situation you've described is going to be true in every case in which money is – And that may be the case, as long as it's not the bank itself that's insolvent and the competition is amongst creditors of the bank. Article III standing is not supposed to be hard, and to say that these parties don't have Article III standing because they're only general creditors of the bank strikes me as a non sequitur. There's no dispute that they've got claims against this pot of money. Why aren't they allowed to assert those claims? Well, Your Honor, because the line is going to be drawn somewhere. If unsecured creditors have standing – Let's say, for example, in this case, that unsecured creditors – They don't have a secured interest in this money, and there's been no showing that they can trace their money into the pot that was seized. If unsecured creditors – Well, I think everybody assumes the latter. I mean, when it comes time to identify the victims, you basically said, these claimants are going to come out okay because, trust us, the Justice Department remission system's going to work. It's going to work because you understand that these claimants are victims and have a claim to this pot of money. So why is it different in the remission process than it is for Article III standing? Because Congress decided that the remission process was a better way to handle this process. Well, if Congress wants to do that, it needs to eliminate civil forfeiture. I mean, to say that these parties don't have Article III standing, I just don't understand it, frankly. How can they not have Article III standing if you're going to turn around and say over in the remissions process that they're the victims that are entitled to recovery? Well, the reason they don't have Article III standing is because of the traditional legal doctrine that depositors don't have a secured interest. What if they put the money under a mattress? I mean, what if Sexton had put the money under a mattress? Would they have Article III standing? All other facts are the same. If they had given their money to Sexton, then no, they would not because they had given up the title to their money when they turned it over to Sexton in return for a debt. There's no constructive trust. They give him the money. They go invest it in oil wells in Turkey just to make up a silly case here. And instead he puts it under his mattress. They don't have a constructive trust beneficiary status under those facts? They may have constructive... In that situation, it's very likely that Mr. Sexton is a constructive trustee of that money. So if they are the beneficiaries of the constructive trust, don't they have Article III standing? I'm not sure that follows once the government seizes that money. And I'm not... I really believe, Your Honor, I understand the point of your question, but based on the authorities, based on California law and federal law, the fact of the deposit into a bank is the critical element. That transmutes the money from the corpus of a constructive trust into something that they can't get anymore? Well, assuming that that does establish a constructive trust, as pointed out in the brief, a constructive trust does not arise as a matter of law under California law. It has to be created by a court. So the fact that they gave the money to Sexton and he put it under his mattress, those facts alone don't cause a constructive trust. No, but they could assert Article III standing and attempt to establish a constructive trust in the civil forfeiture action, couldn't they? They could argue for a constructive trust and based on the district court's decision, if a constructive trust was imposed at that point, then they would have standing on the basis of that constructive trust. And they would have a colorable claim that would allow them to get into federal court to assert the constructive trust. See, the fact that Sexton put the money in a bank and he did so in a different way and on different terms than they had understood, I don't see how that negates the constructive trust theory. Because what they thought was going to happen isn't what happened. That's correct. There was a fraud. That's why you're prosecuting Mr. Sexton. So why don't they at least have a colorable claim that they are the beneficiaries of constructive trust? The reason that they lack that claim is because the court declined to impose a constructive trust. The fact that they have a claim to a... Because the court said they didn't have Article III standing, so it would never have reached that issue. Actually, Your Honor, if you look at the district court's holding was that it treated its constructive trust holdings separately from its Article III standing analysis. And the court held that a constructive trust could be created in order to cause Article III standing to arise. But it explicitly declined to create a constructive trust, finding that the claimants were not entitled to a constructive trust because the government did not stand to be unjustly enriched by the forfeiture of the money. So the district court treated it as a separate issue. And... On the unjust enrichment, if you don't pay interest, isn't the government unjustly enriched? No, Your Honor. The regulations provide for payment of certain costs out of the... I asked about interest. The regulations provide that the interest is not paid out in remission. Well, isn't that an enrichment of the government if it doesn't pay interest and keeps money? To the extent that the government is also... Obviously, no, Your Honor. And the reason why is because the remission regulations, although they are not followed, allow for the government to recover its costs, its very real costs, of investigation... Well, that's a separate issue. The question is on paying interest. Are you not enriched if you get the costs and don't pay any interest? I think we may be, and I don't mean to quibble, Your Honor. I think we may be talking a little bit differently. To the extent that the government obtains interest on that money and holds on to it, yes, they are enriched. All right. Aren't you unjustly enriched? No, we are not. And the reason why is because the government expends an enormous amount of resources and money to seize this money, forfeit this money, prosecute the defendants, and get the money back to the claimants. And those costs are not recovered. I thought they were recoverable. They are potentially recoverable but in practice the government does not. I would suggest to the Court and I believe it's self-evident that if the government were to take out of its remission proceeds all of the money that it spent investigating these giant cases, money would never be remitted because the cost of these investigations are always going to be far more than the government requires. How do we know you won't take it out? You do not know that, Your Honor. But contrary to I mean, you may take it all out and also pay no interest. Isn't that quite possible? Your Honor, it's up to me. I do not believe it is possible and I do not believe it's going to happen. But I can't I'm not the decision maker and I cannot assure you that it will not happen. I can tell you that the practice of the Department of Justice is not to do that, not to deduct those costs. And I have spoken with people in Washington about this and they have assured me that their intent as it was expressed to the government of Lichtenstein as it has been expressed by the Department of Justice throughout this case is to get as much of this money as possible back to as many victims as possible pursuant to the remission process. If this case is remanded to the district court and these claimants are given standing, what will happen next is, first of all, all the claimants will have to be given official notice. Are all of these claimants going to file claims? No, they're not. The claimant's counsel admits that. He knows they're not and he doesn't seem concerned about it. He then goes on to say that, well, if they recover their money, the claimants recover their money and I'll come back to that in a moment because they won't recover their money, but if they do recover their money, he says, well, we'll get our money and then the other claimants, all those other victims out there who didn't file claims, they can file petitions for remission. That's good enough for them. The problem, one of the major problems with that is the money that's left over for remission is the money that's forfeited. These claimants represent, they've represented in their briefs that they're entitled to another $1.5 million worth of recovery in addition to the $1.5 million that they got from Lichtenstein. None of the other victims have recovered anything yet. They're going to go into court, they're going to pursue their claims, they're going to try and get the money that they're entitled to and then they're willing to say, well, whatever's left, the government can split up amongst the rest of the victims. That's not the way the remission process is intended to work and that's not the way it's supposed to work. Well, that doesn't seem to be the position that they've taken in writing to us either. I mean, they've said several times that they're looking for their pro rata share. Well, that's what they've said, Your Honor, but Aren't they kind of bound by that if they make their way back to the courthouse? Wouldn't you hold that up and say to the judge, look, it's only pro rata share? I suppose they are, but I would ask the court to keep in mind that they've already recovered $1.5 million How about if we deduct it? All right. And obviously it will be deducted in the remission process. Let me step back to another point. Them actually prevailing. The statute specifically provides, CAFRA specifically provides, when it defines owners, that owners do not include unsecured creditors. These claimants are unsecured creditors. All of the authorities agree with that. The general creditors, they're unsecured creditors, they do not have a secured interest. They cannot prevail as a matter of law as an owner. They cannot be innocent owners. It is impossible for them to prevail on their     what I'm pointing out here, Your Honor, is if this case is remanded, let's assume that all of the claimants file claims. The fact of the matter is they will lose on summary judgment because they cannot establish as a matter of law that they are innocent owners. Now, I'm not asking the court to jump ahead and make that finding here. What I'm pointing out is there are reasons behind the remission process. And the reasons are to allow the government which represents all of its citizens who has fully investigated these crimes to approach these victims on an informal basis. They don't need to be represented by an attorney. They don't have to have any knowledge about the law. They don't have to make an appearance in a court. They are allowed to submit these petitions under the regulations. Those petitions are subject to a special master or someone else to do that for him. That special master is going to be paid. No question about it. The special master will be paid and that payment will come out of the res. That is a surety. To suggest that there is a possibility that the government may take money out of this res to pay for its own cost is speculative. Certainly if this case goes back to the district court and these people are allowed to come in there will be an enormous impact on the  court. Thank you. If I could just deal with that last issue first of whether it would run up the costs to allow people to litigate this case in court. I had this Florida case with 200 claimants, same deal victims of fraud. Every single one of those 200 claims was resolved out of court. No special master needed to be appointed. The judge didn't have to make any decisions. If Mr. Welk was reasonable in this case, he could resolve all of these claims out of court. There may be one or two claims which have special circumstances which the judge might have to make a decision on. I have another case in Seattle with 3,500 different victims and virtually every one of those is being resolved out of court. That's just a boogeyman story. There's not going to be massive in this case there are only 70 or 80 victims. That's a tiny number compared to some of these other cases. This is a very manageable case if only the government would recognize that we do have standing. I'm very pleased to see that every single judge on this bench gets these issues. I just want to go over some of the what I consider to be dispositive points that I  made. You have pointed out that there's a fundamental contradiction in the government's position which I missed and it's a great issue between their remission regulations which say we have a legally cognizable interest in this property and the position they're  here which is that we don't have a legally cognizable interest. What's the difference between their remission standards which are published after all and Mr. Welch's position? The government has stated and the government has not even contested this that this is our money. We can trace what the government has claimed. Let me turn to something I missed before. The district court did decline to impose the constructive trust here. Doesn't that pose a problem for you? It's a problem unless you reverse that. The decision not to impose the constructive trust was based on fundamental errors which basically the court said that the government would not be unjustly enriched if it got all of this money. Which seems preposterous on its face. You mean to say if the government denied the remission petitions and said we're taking the $4.2 million and we're going to put it into law enforcement that would not be unjust enrichment of the government? The district court assumes the government will return the money to the victims but there's no evidence that it's going to. That's just an assumption. Let's assume the government does return the bulk  money. As Judge Noonan pointed out there's a substantial amount of interest because of the government's own delays. The longer they delay the bigger the interest amount. Wouldn't it be unjust as Judge Noonan pointed out to give the claimant's interest which they have lost to the government? Mr. Welk responded well but we have all these costs involved in investigation and prosecution but there's a separate regulation that says you can deduct the costs of investigation and prosecution. In fact the regulation says you shall deduct them and yet Mr. Welk says that's not going to happen even though the regulation says you shall deduct them. He didn't make any record in the district court about that. The district judge was uncurious about a lot of things in this case. He never asked Mr. Welk about his representation to the court that he  have. He said nothing about that in granting the motion for default. Even apart from whether the government would be unjustly enriched, the way most courts have analyzed this unjust enrichment question is whether the fraudster would be unjustly enriched if they got to keep the money. I think the district court asked the wrong question to begin with. It's not a question of whether the government would be unjustly enriched, it's whether Mr. Saxton would be unjustly enriched and he would be certainly. There's California law which we cited in our briefs that a constructive trust arises at the moment that the fraud is committed even before a judge ever looks at it and it relates back to that time when a judge actually imposes a constructive trust. So that's undisputable. Let me go into a couple of other things. Yes, I think all of you were incredulous at the government's position that somehow the government can get around this constructive trust issue by saying well the money ended up in a bank and somehow the fact that it was deposited in a bank transmutes this case from one involving a constructive trust to make us mere unsecure predators of the bank and I think you all agree that the bank is really not an issue here. It's between us, Saxton, and the government who should get this money and certainly if you go back to the fundamentals about article three standing and we talked a lot about the fundamentals in our briefs we have a concrete enough interest in this money to be able to present the issues to the district court. We clearly have tried to you know this case has dragged on for years Mr. Skarenbuk was we certainly have a concrete interest in this case and as I think you recognize the standard for article three standing is very liberal. We clearly met that standard. The funny thing is we quoted it in our brief verbatim the district judge during the hearing of this matter questioned Mr. Welk as to whether he was making this article three argument with a straight answer to their article three threshold. Mr. Welk raised another issue which the district judge never decided having to do with the merits of the case do we qualify as unsecured creditors? The          if the district judge says I'm granting summary judgment for the government because I don't think you're an innocent owner under the statute because of the legislative history that we discussed in our brief. Congress did look at that issue and in fact I know about it because I was involved in that. I got that  I can't contradict that because it can't be contradicted that is the legislative history of that provision. Mr. Welk also said we're going to try to get more than our pro rata share and I think Judge Clifton disposed of that issue we have never asked for any extra money and we conceded the money we already got should be deducted from our shares and I think the court has a really good grasp of this case so I'm not going to beat a dead horse thank you very very much thank you very much
judges: Noonan, Clifton Fogel